UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ELVIS JOHNSON                                              CIVIL ACTION

VERSUS                                                     NO. 05-6433

BURL CAIN, WARDEN                                          SECTION "R"(4)

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)** and, as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

**I.     Factual and Background**

The petitioner, Elvis Johnson ("Johnson"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that the claim relies on either a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and that the facts underlying the claim are sufficient to establish by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

On September 22, 1994, Johnson was charged by Indictment in Orleans Parish with one count of first-degree murder for the killing of Virginia Mitchell during the perpetration or attempted perpetration of aggravated rape.[2]

On September 27, 1994, Johnson entered a plea of "not guilty" to the charge.[3] On December 12, 1994, attorney Numa Bertel was appointed to represent Johnson.[4]

On January 5, 1995, the defense filed a number of motions, including a motion for speedy trial and a motion to suppress Johnson's confession,[5] and, on August 22, 1996, the State filed a notice of intent to use evidence of other crimes at trial.[6] On December 20, 1996, the trial court denied Johnson's motion to suppress the confession and granted the State's request to use "other crimes" evidence.[7] The defense sought writs to challenge that ruling;[8] however, the Louisiana Fourth Circuit Court of Appeal denied that writ application on September 22, 1997.[9] The defense then filed a writ application with the Louisiana Supreme Court. On March 20, 1998, that application

---

[2] St. Rec. Vol. 1 of 3, Indictment.

[3] State Rec., Vol. 1 of 3, Minute Entry, 9/27/94.

[4] State Rec., Vol. 1 of 3, Minute Entry, 12/12/94.

[5] State Rec., Vol. 1 of 3, Minute Entry, 1/5/95; State Rec., Vol. 1 of 3, Motion for a Speedy Trial; State Rec., Vol. 1 of 3, Motion to Suppress the Confession.

[6] State Rec., Vol. 1 of 3, Minute Entry, 8/22/96; State Rec., Vol. 1 of 3, Notice of Intent to Use Evidence of Other Crimes.

[7] State Rec., Vol. 2 of 3, Transcript, 12/20/96; State Rec., Vol. 1 of 3, Minute Entry, 12/20/96.

[8] State Rec., Vol. 1 of 3, Application for Supervisory Writs.

[9] St. Rec. Vol. 1 of 3, 4th Cir. Order, 97-K-1701, 9/22/97.

was granted, and the matter was remanded to the Court of Appeal.[10] On May 27, 1998, the Court of Appeal again denied relief.[11]

On June 1, 1998, the trial court received a copy of the Court of Appeal's ruling;[12] however, despite that fact, confusion reigned for several years in the state trial court over whether an application was still pending in the appellate courts. Although the matter is not entirely clear, it appears that the confusion resulted at least in part from the prosecutor's representation that the State was awaiting a ruling from the Louisiana Supreme Court[13] when in fact no writ application had been filed in that court.[14] Regardless of how the confusion arose, for a period of more than four years, the trial court issued a series of minute entries incorrectly stating that the matter remained on supervisory review.[15] Finally, on January 15, 2003, the confusion was resolved when the State advised the trial court that "this matter is not on writs."[16]

---

[10] *State v. Johnson*, 715 So.2d 1195 (La. 1998).

[11] *State v. Johnson*, 716 So.2d 403 (La. App. 4th Cir. 1998); St. Rec., Vol. 1 of 3, 4th Cir. Order, 97-K-1701, 5/27/98.

[12] State Rec., Vol. I of 3, Minute Entry, 6/1/98.

[13] For example, a minute entry dated January 8, 2002, states: "State advised that it is awaiting ruling from the Supreme Court." State Rec., Vol. 1 of 3, Minute Entry, 1/8/02. *See also* State Rec., Vol. 1 of 3, Minute Entry, 4/15/02.

[14] In its response in this proceeding, the State concedes that "[a] review of the record of the Louisiana Supreme Court indicates that no further attempts at supervisory review were made regarding that decision." Rec. Doc. No. 21, p. 13.

[15] State Rec., Vol. 1 of 3, Minute Entries dated 8/26/98, 9/24/98, 10/26/98, 12/1/98, 2/1/99, 3/31/99, 8/30/99, 9/13/99, 4/12/00, 1/8/02, 4/15/02, and 11/27/02.

[16] State Rec., Vol. 1 of 3, Minute Entry, 1/15/03.

On March 19, 2003, Johnson, now represented by attorney Dwight Doskey,[17] withdrew the previous plea of "not guilty" and pleaded guilty to the charge of first-degree murder.[18] On that same date, Johnson waived the delay for sentencing and was sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[19]

Because Johnson did not file a direct appeal within the period allowed by state law, his conviction and sentence became final on March 26, 2003. 28 U.S.C. § 2244(d)(1)(A) (for the purposes of a federal habeas corpus proceeding, a state criminal judgment is considered "final" upon the expiration of time for seeking direct review).[20]

## II.  Procedural Background

On January 9, 2004, Johnson filed an Application for Post-Conviction Relief with the state trial court asserting two grounds for relief: (1) his prosecution was untimely pursuant to La.C.Cr.P.

---

[17]Dwight Doskey had enrolled counsel of record for Johnson on May 19, 2000. State Rec., Vol. 1 of 3, Minute Entry, 5/19/00.

[18]St. Rec. Vol. 1 of 3, Minute Entry, 3/19/03; St. Rec. Vol. 1 of 3, guilty plea form, 3/19/03.

[19]St. Rec. Vol. 1 of 3, Minute Entry, 3/19/03.

[20]At the time of Johnson's conviction in 2003, La.C.Cr.P. arts. 13 and 914 provided that a defendant had five days, not including legal holidays and half-holidays, to notice his intent to appeal a conviction or sentence. In Louisiana, all Sundays are legal holidays and (except in Washington Parish under certain circumstances) all Saturdays are, depending on the locality, either holidays or half-holidays. La.Rev.Stat.Ann. § 1:55(A). In 2003, March 22 was a Saturday and March 23 was a Sunday; therefore, out of an abundance of caution, this Court will not count those two days against Johnson when calculating the date his conviction became final.
   The Court also notes that, subject to certain exceptions, a guilty plea normally results in a waiver of a defendant's right to appeal non-jurisdictional defects in the proceedings prior to the plea. *See State v. Crosby*, 338 So.2d 584 (La. 1976). In this case, however, the Court need not decide whether Johnson had a right to appeal his conviction pursuant to La.C.Cr.P. art. 914, in that his application for federal *habeas corpus* relief is timely regardless of whether his conviction was final upon the expiration of the time within which to notice an intent to appeal (March 26, 2003) or upon his plea (March 19, 2003).

art. 578; and (2) his counsel provided ineffective assistance by allowing him to plead guilty after expiration of that state prescriptive period.[21]

The trial court denied that application on May 28, 2004.[22] The court held that Johnson's claims were without merit and that he failed to provide any evidence in support of his allegations.

Johnson thereafter sought timely review of that ruling from the Louisiana Fourth Circuit Court of Appeal.[23] The court denied relief on September 2, 2004, finding no error in the trial court's ruling.[24]

Johnson then filed a timely Louisiana Supreme Court Writ Application arguing that the trial court erred in failing to grant relief based on the two claims asserted.[25] The Louisiana Supreme Court denied that application without reasons assigned on August 19, 2005.[26]

## III. Federal Petition

On October 18, 2005, Johnson filed a Petition for Federal Habeas Corpus Relief raising two grounds for relief: (1) his prosecution was untimely pursuant to La.C.Cr.P. art. 578; and (2) his counsel provided ineffective assistance by allowing him to plead guilty after expiration of that state

---

[21]St. Rec. Vol 1 of 3, Uniform Application for Post-Conviction Relief, 1/9/04.

[22]St. Rec. Vol. 1 of 3, Minute Entry, 5/28/04.

[23]Supplemental St. Rec. Vol. 1 of 1, Writ Application, 2004-K-1098 (signed 6/24/04, file-stamped 7/1/04).

[24]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2004-K-1098, 9/2/04.

[25]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 2004-KH-2761 (signed 9/27/04, metered 9/28/04, file-stamped 11/9/04).

[26]*State ex rel. Johnson v. State*, 908 So.2d 677 (La. 2005); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2004-KH-2761, 8/19/05.

prescriptive period.[27] The State filed an opposing memorandum arguing that Johnson's claims are without merit.[28]

## IV. Timeliness

In this proceeding, the State concedes that Johnson's federal application is timely filed.[29] After conducting an independent review, the Court agrees for the following reasons.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] generally requires that a petitioner bring his § 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final." 28 U.S.C. § 2244(d)(1)(A).[31] Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review. *Id*. Therefore, as noted previously, Johnson's conviction and sentence became final on March 26, 2003.[32] Accordingly, Johnson's one-year period to file his application for federal habeas corpus relief commenced on that date.

The AEDPA further provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C. § 2244(d)(2). In the instant

---

[27]Rec. Doc. No. 1.

[28]Rec. Doc. No. 21.

[29]Rec. Doc. No. 21, p. 4.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[31]Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, the alternative provisions are not applicable in the instant case.

[32]*See supra* note 20.

case, two hundred eighty-eight (288) days of Johnson's one-year statute of limitations elapsed prior to the limitations period being tolled by the filing of his state post-conviction application on January 9, 2004. Although that application was denied, tolling continued uninterrupted until August 19, 2005, when the Louisiana Supreme Court denied the related writ application. *See Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-70 (5th Cir. 2004).

At that point, a total of seventy-seven (77) days of the one-year period remained. Johnson's federal application is therefore clearly timely, because it was filed a mere sixty (60) days later on October 18, 2005.[33]

**V.     Exhaustion**

Pursuant to 28 U.S.C. § 2254(b)(1)(A), a petitioner must normally first exhaust his remedies in state court before seeking habeas corpus relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

In this proceeding, the State concedes that Johnson exhausted his state court remedies with respect to the two claims asserted in his instant petition.[34] Because Johnson asserted the same two

---

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Johnson dated his signature on the petition on October 18, 2005, which is the earliest date he could have delivered it to prison officials for mailing.

[34]Rec. Doc. No. 21, pp. 9 and 11.

claims in his Louisiana Supreme Court writ application in case number 2004-KH-2761,[35] this Court agrees.

## VI. Standards of Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law. A state court's determinations of questions of fact are presumed correct, and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.

A state court's decision is "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

---

[35]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 2004-KH-2761.

A state court's decision involves an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *Cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Woodford*, 537 U.S. at 24-25.

### VII.   Violation of La.C.Cr.P. art. 578

9

Johnson's first claim is that his conviction is invalid because he was not brought to trial within the period of time prescribed by La.C.Cr.P. art. 578. That article provides:

> A. Except as otherwise provided in this Chapter, no trial shall be commenced nor any bail obligation be enforceable:
>
> (1) In capital cases after three years from the date of institution of the prosecution;
>
> (2) In other felony cases after two years from the date of institution of the prosecution; and
>
> (3) In misdemeanor cases after one year from the date of institution of the prosecution.
>
> B. The offense charged shall determine the applicable limitation.

La.C.Cr.P. art 578. Johnson argues that the prosecution of this case was instituted by the filing of the indictment on September 22, 1994, and that the three-year prescriptive period provided in Article 578 for capital offenses expired long before he ultimately pleaded guilty on March 19, 2003.

In its opposition, the State argues that Johnson's claim is not cognizable in this federal proceeding, because the claim is founded on an alleged violation of state law. The State is correct. Federal habeas corpus relief may be granted only to remedy violations of the *federal* Constitution and laws of the United States; mere violations of *state* law will not suffice. 28 U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1983); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998).

**VIII.   Ineffective Assistance of Counsel**

Johnson next asserts a related ineffective assistance of counsel claim. Specifically, he claims that his counsel was ineffective in allowing him to plead guilty after the prescriptive period in La.C.Cr.P. art. 578 expired.

10

Johnson raised this claim in his state Application for Post-Conviction Relief. Without an evidentiary hearing, the trial court denied that application, stating without further elaboration: "THIS COURT RECEIVED DEFENDANT'S PRO-SE APPLICATION FOR POST CONVICTION RELIEF WHICH THE COURT DENIES AS DEFENDANT'S CLAIMS ARE WITHOUT MERIT. FURTHER, HE HAS FAILED TO PROVIDE ANY EVICENCE [sic] TO SUPPORT SAID ALLEGATIONS."[36] Also without additional reasons or elaboration, the Louisiana Fourth Circuit Court of Appeal and the Louisiana Supreme Court thereafter likewise denied relief.[37]

### A. **The *Strickland* Standard**

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove both deficient performance and prejudice therefrom. *See id*. at 697. To meet the burden of proving ineffective assistance of counsel, a petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of

---

[36]St. Rec. Vol. 1 of 3, Minute Entry, 5/28/04.

[37]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2004-K-1098, 9/2/04; *State ex rel. Johnson v. State*, 908 So.2d 677 (La. 2005); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2004-KH-2761, 8/19/05.

counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

Regarding the prejudice prong of the inquiry, the United States Court of Appeals for the Fifth Circuit has held: "In the context of guilty pleas, [a habeas petitioner] may establish the requisite prejudice only by demonstrating a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and would have insisted upon going to trial." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "When the alleged error of counsel is failure to advise of an affirmative defense, the outcome of the prejudice element of the test will depend largely on whether the affirmative defense likely would have succeeded at trial." *Nelson*, 989 F.2d at 850 (quotation marks and brackets omitted); *see also Hill*, 474 U.S. at 59.

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

### B. Merits of Johnson's Claim

In the instant case, Johnson argues that his counsel was ineffective in allowing him to plead guilty after the prescriptive period in La.C.Cr.P. art. 578 had expired. Johnson contends that his

counsel should instead have moved to quash the indictment. For the following reasons, this Court agrees that Johnson's counsel was, in fact, ineffective in that respect.

In *Rutledge v. Wainwright*, 625 F.2d 1200 (5th Cir. 1980), the United States Court of Appeals for the Fifth Circuit faced a similar claim raised by a Florida prisoner, James Rodney Rutledge. In that case, the Fifth Circuit noted:

> Rutledge's appellate contentions that his counsel was ineffective and his plea involuntary both hinge on his lawyer's advice concerning Rutledge's speedy trial and conflict of interest claims. If the lawyer's counseling was so patently wrong as to transgress some constitutional minimum of competent legal advice, then clearly the lawyer was so ineffective that Rutledge's plea based on his advice could not have been knowing and willing. *Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976). Conversely, if Rutledge's trial counsel merely erred strategically, his advice was nonetheless competent and Rutledge's plea a calculated but voluntary risk. See *Coco v. United States*, 569 F.2d 367, 371 (5th Cir. 1978). To measure the lawyer's effectiveness, then, we must first ascertain the constitutional minimum of competent advice on speedy trial rights and conflict of interest claims.
>
> That minimum level of competence depends to some extent on the clarity of state law. *If the law concerning speedy trial rights and conflicts of interest was unambiguous in every applicable aspect, any erroneous advice would have transgressed the minimum effective assistance due Rutledge.* "(C)onstitutionally effective assistance must make an informed evaluation of possible defenses and have a meaningful discussion of the reality of the case with his client. . . ." *Dixon v. Balkcom*, 614 F.2d 1067, 1068 (5th Cir. 1980). *Because Florida law provides for unconditional discharge if speedy trial provisions are violated, a failure to advise Rutledge accurately concerning this defense certainly would amount to a constitutional deprivation.* If the law pertinent to Rutledge's case was not clear, however, advice amounting to no more than a mistaken tactical maneuver would not have reached the level of constitutional deprivation. *Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977).

*Rutledge*, 625 F.2d at 1203 (emphasis added).

In the instant case, the state laws at issue are sufficiently unambiguous. Under Louisiana law, a criminal defendant may file a motion to quash if he is not brought to trial within the period prescribed by Article 578. La.C.Cr.P. art. 532(7); *State v. Ramirez*, 976 So.2d 204, 207 (La. App. 4th Cir. 2008). If the trial court finds that a trial was not timely commenced, the court *must* uphold

the motion to quash and dismiss the indictment. La.C.Cr.P. art. 581; *State v. Oliver*, 786 So.2d 317, 320 (La. App. 2nd Cir. 2001). When the indictment is dismissed under those circumstances, "there shall be no further prosecution against the defendant for the same or a lesser offense based on the same facts." La.C.Cr.P. art. 581; *State v. Bell*, 346 So.2d 1090, 1101 (La. 1977); *State v. Powers*, 344 So.2d 1049, 1051 (La. 1977).

Moreover, Article 578 was in fact clearly violated in this case. Because Johnson was charged with a capital crime, *i.e.*, first-degree murder, state law required that he be brought to trial within three years of the date on which the prosecution commenced. La.C.Cr.P. art. 578(A)(1); *State v. Howard*, 325 So.2d 812, 815 (La. 1976). Johnson's prosecution was instituted by the return of the Indictment on September 22, 1994. La.C.Cr.P. art. 934(7); *State v. Butler*, 302 So.2d 585, 587 (La. 1974); *State v. Jones*, 780 So.2d 1234, 1238 (La. App. 2nd Cir. 2001). One hundred four (104) days of the three-year prescriptive period then elapsed before being suspended on January 5, 1995, by the defense's filing of the motion to suppress the confession. La.C.Cr.P. art. 580; *State v. Brooks*, 505 So.2d 714, 725 (La. 1987) (the filing of a motion to suppress a confession suspends the prescriptive period). When the suppression issue was finally resolved by the Louisiana Fourth Circuit Court of Appeal's denial of May 27, 1998, the State then had remaining nine hundred ninety-one (991) days, *i.e.*, until February 12, 2001,[38] to bring Johnson to trial. However, the State did not proceed to trial by that date, and the prescriptive period thus expired. Accordingly, when Johnson pleaded guilty on March 19, 2003, it was over two years after the expiration of the prescriptive period.

---

[38]The final day of that period would have February 11, 2001; however, because that date was a Sunday, the State had until the following date to commence trial. *See* La.C.Cr.P. art. 13; La.Rev.Stat.Ann. § 1:55.

In reaching this conclusion, the Court expressly rejects the State's contention that the misunderstanding as to whether a Louisiana Supreme Court writ was pending between 1998 and 2003 amounted to a cause beyond the state's control which would interrupt prescription.[39] Under Louisiana law, "[t]he period of limitation established by Article 578 shall be interrupted if: ... The defendant cannot be tried ... for any ... cause beyond the control of the state ...." La.C.Cr.P. Art. 579(A)(2). However, the State carries a "heavy burden" in establishing that the prescriptive period should be interrupted for matters allegedly out of its control, and the State must show that it exercised "due diligence." *See State v. Carcamo*, 860 So.2d 220, 224 (La. App. 5th Cir. 2003). Further, an interruption of the prescriptive period occurs only when the State "is unable, *through no fault of its own*, to try a defendant within the period specified by statute ...." *State v. Rome*, 630 So.2d 1284, 1287 (La. 1994) (emphasis added). Here, it is obvious that at no time between May of 1998 and January of 2003 did the prosecutor even bother to check to see if a writ application had, in fact, been filed in the Louisiana Supreme Court. Moreover, the prosecutor even perpetuated the misunderstanding by expressly representing to the trial court that such a writ application was pending.[40] Accordingly, the Court finds that the prosecutor failed to exercise due diligence and that the prolonged delay in this case was attributable at least in part to the State. Article 579(A)(2) is therefore inapplicable.

The Court further finds that Johnson has demonstrated that defense counsel did, in fact, perform deficiently. With minimal effort, defense counsel could have and should have ascertained that no Louisiana Supreme Court writ application was ever pending at any time from 1998 through

---

[39]*See* Rec. Doc. No. 21, p. 14.

[40]For example, a minute entry dated January 8, 2002, states: "State advised that it is awaiting ruling from the Supreme Court." State Rec., Vol. 1 of 3, Minute Entry, 1/8/02. *See also* State Rec., Vol. 1 of 3, Minute Entry, 4/15/02.

15

2003. With that information, he could have successfully argued that the State had no valid reason for failing to bring Johnson to trial within the prescriptive period. Further, because the assertion of an Article 578 defense would have resulted in a complete dismissal of the indictment with no possibility of a future prosecution based on the offense, there was no conceivable strategic reason for defense counsel's failure to advise his client of that defense and to file a motion to quash. Accordingly, defense counsel's failings in these respects obviously constituted deficient performance. *See, e.g., Brown v. Butler*, 811 F.2d 938, 942 (5th Cir. 1987) (noting that counsel's performance would fall "below the objective standard of reasonableness" if he failed to advise his client of an available viable defense, because, without such advice, the client is "unable to make an informed and conscious choice of whether he should enter a guilty plea").

It is also evident that Johnson was prejudiced by counsel's deficient performance. As previously noted, a habeas petitioner who pleaded guilty establishes the requisite prejudice for an ineffective assistance claim "by demonstrating a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty and would have insisted upon going to trial." *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993). In the instant case, Johnson states: "Had [he] known on March 19, 2003 that he could have asserted his right to have the instant charge quashed due to untimely prosecution, he would have done so."[41] He further notes that it is self-evident that he would have made that choice, correctly observing: "Reasonable common sense dictates that where a criminal defendant (who is charged with an offense punishable by life imprisonment or death penalty as in [my] case) also knows he has a choice to not be prosecuted on the charge at all would necessarily choose not to be prosecuted." This Court agrees with that contention and finds the

---

[41]Rec. Doc. No. 1, supporting memorandum, p. 17.

State's suggestion to the contrary[42] meritless. Further, the Court finds patently absurd the State's suggestion that Johnson suffered no prejudice here because he is already serving lengthy sentences, including two consecutive life sentences, for other crimes.[43] That is not the relevant test and, in any event, it in no way alleviates the constitutional harm Johnson has suffered as a result of his wrongful conviction and sentence in *this* case.

In summary, this Court finds that defense counsel's failure to investigate and discover an easily ascertainable and viable defense and his further failure to pursue and advise his client of that defense constituted ineffective assistance of counsel. Even under the highly deferential standard of review imposed by the AEDPA, the Court finds that the state court's decision to the contrary involved an objectively unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Accordingly, Johnson's habeas corpus petition should be granted.

## IX. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Elvis Johnson's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **GRANTED** with respect to his conviction for the first-degree murder of Virginia Mitchell. ***This recommendation has no bearing on Johnson's continued incarceration based on his other numerous convictions.***

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

---

[42]Rec. Doc. No. 1, supporting memorandum, p. 16.

[43]Rec. Doc. No. 21, p. 15; *see also Johnson v. Cain*, Civ. Action No. 05-6378, 2008 WL 4657276 (E.D. La. Oct. 20, 2008) (which recounts in detail Johnson's lengthy criminal history and other sentences).

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 11th day of February, 2009.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**